902 So.2d 1283 (2005)
Ricky THOMAS, Plaintiff-Appellee
v.
CASINO MAGIC, Defendant-Appellant.
No. 39,725-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
Rehearing Denied June 23, 2005.
*1285 Robert Hanna, Shreveport, for Appellee.
Lunn, Irion, Salley, Carlisle & Gardner, by Walter Salley, Shreveport, for Appellant.
Before BROWN, GASKINS and LOLLEY, JJ.
LOLLEY, J.
This appeal arises from an action for workers' compensation in which Ricky Thomas was found entitled to benefits, plus penalties and attorney fees for injuries he sustained while in the employment of Casino Magic. For the reasons expressed, we affirm in part and reverse in part.

FACTS
Ricky Thomas brought this workers' compensation claim against his employer, Casino Magic. On February 18, 2001, Thomas allegedly tripped in the kitchen of Casino Magic when his feet became entangled in some plastic banding material that was left on the floor. According to Thomas' testimony he landed on his right knee and then his left shoulder, popping his neck when he hit the floor. He alleged that he hurt his neck and arm, as well as his knee and hip. Although Thomas reported the fall to his supervisor and was referred to the security office to file a report, he did not seek medical attention the day of the fall.
Thomas is a U.S. Army veteran and previously received all of his medical treatment through the Veterans Administration Medical Center ("VAMC"). He admits experiencing intermittent, moderate pain in his neck before the accident. He also experienced some numbness in his left arm before the accident. It was Thomas' testimony that after the accident, his neck pain consistently became more severe. Thomas testified that by April 28, 2001, the increased neck and arm pain, along with weakness in his left arm and hand intensified so that he was no longer capable of performing his work.
Thomas requested medical treatment for his neck and left arm pain from Casino Magic which referred him to Dr. Raymond Dennie, a board eligible occupational medicine physician with Willis-Knighton Work Kare. Dr. Dennie examined Thomas once and testified by way of deposition that it was his opinion that had the accident caused the complaints, the pain would have occurred within days or a week after the accident rather than two months. Dr. Dennie's medical report noted that Thomas was on multiple medications including narcotic pain medications and was scheduled *1286 for an MRI. Dr. Dennie was not able to make a determination as to the cause of Thomas' neck and arm pain.
Thomas returned to the VAMC for continued treatment. The medical staff there referred Thomas for consultation with Dr. Donald Smith, a board certified neurosurgeon, who reviewed his MRI and found it showed chronic degenerative disc changes and defects at the C5-C6 and C6-C7 level. Dr. Smith found that Thomas' subjective complaints were consistent with objective findings of degenerative changes and defects at these levels. Thomas' complaints included numbness in three fingers of his left hand, tingling, decreased sensation at the left index finger and pain. Because conservative treatment had not relieved Thomas of his pain, Dr. Smith recommended surgery to address his neck pain. On October 5, 2001, Dr. Smith performed an anterior cervical disc fusion on Thomas, and the surgery revealed a large protrusion of disc material or acute herniation at the C5-C6 level and osteophytes with some encroachment at the C6-C7 level. Although Dr. Smith was of the opinion that the osteophytes developed over time, he believed that the protrusion was caused by an unidentified single event or events and felt that the herniation had been present for less than one year.
Thomas filed a claim with the Office of Workers' Compensation asserting that he sustained a work-related accident causing injuries to his shoulder, neck, and arm. Casino Magic denied Thomas' claim for workers compensation benefits, and this disputed claim ensued.
The matter proceeded to a hearing on October 30, 2003, at which Thomas' medical records, including those from the VAMC, the Work Kare report dated May 7, 2001, and the depositions of Dr. Smith and Dr. Dennie, were introduced into evidence. After hearing testimony of Thomas, his former supervisor at Casino Magic, and from co-workers, the Workers' Compensation Judge ("WCJ") took the case under advisement. Ultimately, the WCJ rendered an oral ruling finding that "by virtue of Thomas' medical records and Casino Magic's records, claimant has established that he sustained an injury from an accident on his job for defendant, Casino Magic, on February 18, 2001," and that this accident was the cause of his disability. The WCJ further found that Casino Magic was arbitrary and capricious in its denial of Thomas' claim. The WCJ awarded Thomas indemnity benefits of 66 2/3% of his average weekly wage of $268.00, or the sum of $178.67, per week from April 28, 2001, until he is able to return to work. Thomas was awarded reimbursement for all medical bills paid by or incurred by him as a result of the claimed disability, as well as expenses for travel mileage between his home and the treating physician. Moreover, he was awarded 12% of any unpaid benefits subject to a maximum of $5,000.00, plus attorney fees in the amount of $7,500.00 and cost of the proceedings. A judgment was signed on June 4, 2004, following which this appeal by Casino Magic ensued.

DISCUSSION
Casino Magic's three assignments of error can be consolidated as follows. Primarily, it urges that the WCJ erred in finding that Thomas met his burden of proof that his workplace fall caused his neck injury, entitling him indemnity benefits. Casino Magic also contends that the WCJ committed manifest error in awarding penalties and attorney fees for nonpayment of medical expenses and indemnity benefits.
On appeal, the factual findings of a WCJ are subject to the same standard of review as in other cases; i.e., a trial court's *1287 finding of fact may not be set aside on appeal unless there is no reasonable factual basis for the finding and the finding is clearly wrong (manifestly erroneous). Bolton v. B E & K Construction, XXXX-XXXX (La.App. 1st Cir.06/21/02), 822 So.2d 29; McCray v. Delta Industries, Inc., XXXX-XXXX (La.App. 1st Cir.09/28/01), 809 So.2d 265, 269; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the reviewing court may not reverse. Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Bolton, supra, citing Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990).
The finding of disability within the framework of the workers' compensation law is a legal rather than a purely medical determination. Therefore, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Ultimately the question of disability is a question of fact, which cannot be reversed in the absence of manifest error. Severio v. J.E. Merit Constructors, Inc., XXXX-XXXX (La.App. 1st Cir.02/14/03), 845 So.2d 465; Brown v. Churchill & Thibaut, Inc., 93-1216 (La.App. 1st Cir.05/20/94), 637 So.2d 764, 768.
An injured employee is entitled to receive benefits for an injury that arises out of and in the course of his employment. La. R.S. 23:1031. A workers' compensation claimant bears the initial burden of establishing the causal connection between the disability and the employment accident by a reasonable preponderance of the evidence. The claimant is not required to establish the exact cause of the disability, but must demonstrate by a preponderance of proof that the accident had a causal connection with the disability. Thompson v. Dillard's Department Store, 32,974 (La.App. 2d Cir.05/10/00), 759 So.2d 1074. Proof by a preponderance of the evidence exists when the evidence, taken as a whole, shows the facts sought to be proved are more probable than not. Id. An employee's preexisting condition does not disqualify his claim if the work-related injury either aggravated or combined with the infirmity to produce the disability for which compensation is claimed. Id.
Although the evidence indicates that Thomas did suffer some chronic pain in regards to his neck and arm prior to the accident, a review of the evidence in its totality supports the findings by the WCJ that the aggravated injuries resulted from the accident. Here, some of Thomas' co-workers testified at trial that he complained of his pain before and after the accident, others recalled that the complaints were the same, while others seemed to remember Thomas complained about his arm only after the fall. Dr. Smith was of the opinion that although the osteophytes developed over time, the protrusion found during the surgical procedure was caused by an unidentified single event and the herniation had been present for less than a year.
We cannot say that the WCJ was manifestly erroneous in giving greater weight to the testimony of Dr. Smith than that of Dr. Dennie. The testimony of Dr. Smith sufficiently corroborated the testimony of Thomas, that his condition worsened after the accident and that the protrusion and herniation resulted from the accident he sustained while working for Casino Magic. Thus, we conclude that the WCJ properly found that Thomas met his burden of proof. Casino Magic also contends that the WCJ committed manifest error in finding *1288 it was arbitrary and capricious in denying Thomas benefits.[1] We agree.
Regarding a claim under La. R.S. 23:1201(F), an employee has the burden of proving his entitlement to statutory penalties for the employer's failure to timely pay workers' compensation benefits. To reasonably controvert a workers' compensation claim so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual and medical information to reasonably counter the evidence provided by the claimant. Bolton v. Mike Fleming Construction, 36,521 (La.App. 2d Cir.12/11/02), 833 So.2d 1177.
To meet this standard, the employer must have some "valid reason or evidence upon which to base his denial of benefits." Feild v. General Motors Corporation, 36,339 (La.App. 2d Cir.09/18/02), 828 So.2d 150.
Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. The WCJ's decision to award or deny attorney fees is subject to manifest error of review. Bolton v. Mike Fleming Construction, supra.
A review of all the testimony, medical records and evidence shows that Casino Magic had sufficient evidence to reasonably controvert Thomas' claims. It was uncontested that before Thomas' accident at Casino Magic, he suffered from chronic neck and arm pain which required periodic medical treatment. Also noteworthy was the inconclusive medical testimony of Dr. Dennie. Hence, we find that there was sufficient evidence warranting Casino Magic to contest Thomas' claim of a work related disability. So considering, we reverse that part of the judgment awarding Thomas penalties and attorney fees. Costs of these proceedings are accessed to both parties equally.
AFFIRMED IN PART. REVERSED IN PART.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Here, the WCJ applied the incorrect statute when awarding penalties and attorney fees on the finding that Casino Magic acted arbitrarily or capriciously by failing to award compensation benefits to Thomas. However, pursuant to La. R.S. 23:1201(I) the standard of "arbitrary, capricious, and without probably cause" pertains to cases where the employer terminated claimant's benefits (discontinuance of benefits) and not to cases such as the instant case where there was a failure to provide compensation benefits. Pursuant to La. R.S. 23:1201(F), a failure to provide compensation benefits shall result in assessment of penalties and reasonable attorney fees unless the claim is "reasonably controverted" or nonpayment results from conditions over which the employer or its insurer had no control.